UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


CRAIG COKER,

                    Petitioner,

                                                    Case No. 5:05-cv-131
v.

                                                    Hon. Wendell A. Miles

SHIRLEE HARRY,

                    Respondent.

_____/


OPINION AND ORDER

        Petitioner, Craig Coker, filed a petition for habeas corpus relief pursuant to 28 U.S.C.

§ 2254.  On October 24, 2001, following a jury trial in the St. Joseph County Circuit Court,

Petitioner was convicted of premeditated murder (MICH. COMP. LAWS § 750.316(1)(a)), armed

robbery (MICH. COMP. LAWS § 750.529), felony firearm (MICH. COMP. LAWS § 750.227(b)), and

felony murder (MICH. COMP. LAWS § 750.316(2)(B).  He was sentenced to mandatory life and 2

years.  In an unpublished opinion, his conviction was affirmed by the Michigan Court of Appeals

on March 20, 2004.  (Docket #23, People v. Coker, Mich. Ct. App., Mar. 30, 2004).  The

Michigan Supreme Court denied review on September 28, 2004, because it "was not persuaded

that the questions presented should be reviewed by this Court."  ( Docket # 24, People v. Coker,

Mich., Sept. 28, 2004).  In his present pro se petition for habeas corpus relief, he raises the

following claims, all of which he had raised on direct appeal:

        I.      The trial judge deprived Petitioner of his state and federal constitutional
                rights to a fair trial by allowing the prosecutor to introduce gruesome
                photographs of the decedent.

II.     The trial judge deprived Petitioner of a fair trial and violated Michigan Rules of Evidence by allowing the prosecutor to introduce evidence of threats Petitioner allegedly made against someone other than the decedent. The judge also allowed the prosecutor to admit evidence that one witness encouraged another witness to lie.

III.    The trial judge violated Petitioner's state and constitutional rights to a fair trial by admitting hearsay evidence under the state's "catch all" exception to the hearsay rule.

Standard of Review

This action is governed by the Antiterrorism and Effective Death Penalty Act, PUB. L. 104-132, 110 STAT. 1214 (AEDPA).  See Penry v. Johnson, 532 U.S. 782, 792 (2001). The AEDPA prevents federal habeas 'retrials' and ensures that state court convictions are given effect to the extent possible under the law.  Bell v. Cone, 535 U.S. 685, 693-94 (2002).  The AEDPA has "drastically changed" the nature of habeas review.  Bailey v. Mitchell, 271 F.3d 652, 655 (6th Cir. 2001).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court.  Williams v. Taylor, 529 U.S. 362, 412 (2000); Bailey, 271 F.3d at 655.  In determining whether federal law is clearly established, the

Court may not consider the decisions of lower federal courts.  Id.; Harris v. Stovall, 212 F.3d

940, 944 (6ᵗʰ Cir. 2000).  "Yet, while the principles of 'clearly established law' are to be

determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may

be  instructive in assessing the reasonableness of a state court's resolution of an issue."  Stewart

v. Erwin, 503 F.3d 488, 493 (6ᵗʰ Cir. 2007).  The inquiry is "limited to an examination of the

legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court

precedent at the time [the petitioner's] conviction became final."  Onifer v. Tyszkiewicz, 255

F.3d 313, 318 (6ᵗʰ Cir. 2001).

 A decision of the state court may only be overturned if (1) it applies a rule that

contradicts the governing law set forth by the Supreme Court, (2) it confronts a set of facts that

are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at

a different result; (3) it identifies the correct governing legal rule from the Supreme Court

precedent but unreasonably applies it to the facts of the case; or (4) it either unreasonably

extends a legal principle from Supreme Court precedent to a new context where it should not

apply or unreasonably refuses to extend a principle to a context where it should apply.  Bailey,

271 F.3d at 655 (citing Williams, 529 U.S. at 405-07); *see also* Bell, 535 U.S. at 694; Lancaster

v. Adams, 324 F.3d 423, 429 (6ᵗʰ Cir. 2003).

## Discussion

 Jesse Ramer and his girlfriend, Jeri Evilsizor, shared a residence near Sturgis, Michigan.

On the evening of January 18, 2001, Jesse left their home and drove into town to collect money

owed to him.  When he returned, Jeri was lying on the front porch in a pool of blood.  Police

investigators found two shell casings, and blood spatters in various areas in the snow.  It was

3

later determined that Ms. Evilsizor had been shot in the back.  Investigators also observed that one of the bedrooms was in disarray, with dresser drawers removed from the dressers and turned upside down.  All of the pillows on the living room couch had been removed.  Based upon the evidence at the crime scene, it was the investigator's opinion that when shot, Ms. Evilsizor was on the porch and the shooter was at the front door of the residence.  (Trial Tr. V. III, testimony of Sergeant David Ives, Sturgis Police Department, 193-222).

Lynn Hurley testified that earlier that day, Petitioner had stated that he was going to get even with Ramer.  (Trial Tr. V. III, 14).  Later, Petitioner and his co-defendant, Matthew Hobbs, asked Hurley if he wanted to go with them to Ramer's house to solve a problem.  (Id., 17).  In the car, Hurley observed an assault rifle.  (Id., 19).  While driving to Ramer's house, Petitioner stated that someone might get shot.  (Id., 20).  At Ramer's house, Hurley at first stayed in the car while Petitioner and Hobbs went into the house.  After some time, Hurley went into the house and was told by Petitioner to carry a box to the car.  While walking to the car, Hurley "heard a gunshot and a lady scream," and when he turned around he saw Petitioner "shoot two more times, and the lady fall . . . ."  (Id., 24).

Aimee Swift testified that on the night of the shooting Petitioner, Hobbs and Hurley arrived at her apartment between 11 and 12 p.m.,  removed their clothes, washed the clothes and took showers.  (Trial Tr. IV, 51).  Ms. Swift admitted that she had originally lied to the police about the events of that evening, and that Sue Lockhart had asked her to lie.  Ms. Lockhart had provided her with a written story and told her to read it over and over, and afterwards, Ms. Lockhart burned the paper.  (Id., 84-85).

**Claim I**

Petitioner contends that his due process rights were violated by the admission of

gruesome photographs of the victim and the crime scene.  The trial judge admitted three

photographs into evidence over Petitioner's objection.  The states' exhibit 5 showed the victim

lying on the porch, covered by a sheet.  Her blood -covered arm and a pool of blood were visible.

The states' exhibits 6 and 7 showed the victims' wounds.  The trial court admitted exhibit 5,

finding that it was not particularly inflammatory or gruesome.  The trial court admitted exhibit 7,

showing the small entrance wound, also finding that it was not particularly inflammatory or

gruesome.  The trial court admitted exhibit 6, showing the exit wound, concluding that it would

help the jury understand the testimony of the pathologist.  The Michigan Court of Appeals

affirmed the trial court's decision, reasoning that:

> [T]he gruesome nature of a photograph is insufficient by itself to exclude
> relevant evidence.  "Relevant evidence is inherently prejudicial; but it is
> only unfair prejudice, substantially outweighing probative value, which
> permits exclusion of relevant matter under [Michigan] Rule 403."  Because
> the trial court is in the best position to contemporaneously assess whether
> the danger of unfair prejudice substantially outweighs the relevancy of
> evidence, the record here simply does not establish that the trial court
> abused its discretion finding the evidence relevant and not excluding the
> evidence under the balancing test of MRE 403.

(Docket #23, People v. Coker, Mich. Ct. App., March 30, 2004, 3-4 (internal citations omitted)).

Generally, "'[e]rrors by a state court in the admission of evidence are not cognizable in

habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to

deny the defendant the fundamental right to a fair trial.'"  Biros v. Bagley, 422 F.3d 379, 391 (6th

Cir. 2005), quoting Roe v. Baker, 316 F.3d 557, 567 (6th Cir.2002); and see Payne v. Tennessee,

501 U.S. 808, 825 (1991) ("In the event that evidence is introduced that is so unduly prejudicial

that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth

Amendment provides a mechanism for relief"); Coleman v. Mitchell, 244 F.3d 533, 542 (6th

Cir.2001) ("A state court evidentiary ruling will be reviewed by a federal *habeas* court only if it

were so fundamentally unfair as to violate the petitioner's due process rights"); Brown v. O'Dea,

227 F.3d 642, 645 (6th Cir. 2000) (stating that a "violation of a state's evidentiary rule warrants

habeas corpus relief only when such violation results in the denial of fundamental fairness, and

concomitantly, a violation of due process.").   The term "unfair prejudice," as to a criminal

defendant, refers to the capacity of some relevant evidence to lure the factfinder into declaring

guilt on a ground different from proof specific to the offense charged.  Old Chief v. United

States, 519 U.S. 172, 180 (1977).

A review of the record indicates that the photographs presented a fair representation of

the victim at the time she was discovered.  (See docket #23, Appendix A-C).  The photographs

were introduced to help the jury understand the pathologist's testimony, and are not so grisly as

to unfairly invoke the jurors' emotions.  The Sixth Circuit has affirmed the admission of more

gruesome, and therefore more prejudicial, photographs than those at issue in this case. See  Biros

v. Bagley, 422 F.3d 379, 391 (6th Cir.2005) (concluding that state court decision affirming the

admission of "three photographs-depicting [the victim's] severed head, her severed head held

near her torso and severed breast, and her torso with the severed head and severed breast

replaced on torso," was not unreasonable application of Supreme Court precedent because the

photographs refuted the petitioner's account of the victim's death); Frazier v. Huffman, 343 F. 3d

780, 789 (6th Cir. 2003) (denying habeas relief where multiple photographs were introduced

during the coroner's testimony to illustrate the testimony and that each photograph presented a

different perspective of the victim, and that the photographs illustrated the nature of the encounter that immediately preceded the victim's death); United States v. Brady, 595 F.2d 359 (6th Cir. 1979) ( allowing photographs of dead victims of a bank robbery, which were probative of the issue whether the killings were committed in the course of the robbery); and see Wilson v. Sirmons, 536 F.3d 1064 (10th Cir. 2008) (admitting photographs of murder victim's back and head in a pool of blood, and photograph of victim's entire body face down on floor did not render trial fundamentally unfair where they allowed medical examiner to show where baseball bat caused various injuries and they were probative of the attacker's intent to kill); Kuntzel v. Black, 774 F.2d 291, 292 (8th Cir. 1985) (affirming denial of habeas relief where trial court admitted "particularly gruesome" photographs of a murder victim's body and body parts from an autopsy because they were "relevant and probative" in showing the condition of the deceased, the location of the wound, and the defendant's intent).  Accordingly, the Michigan Court of Appeals resolution of this issue was not contrary to, nor an unreasonable application of, clearly established federal law.

**Claim II:**

Petitioner claims that he was denied a fair trial when the trial judge allowed evidence of threats Petitioner made against someone other than the decedent, and evidence that one witness encouraged another witness to lie.

As the Supreme Court explained in Estelle v. McGuire, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions."  Id. at 67-68.

7

Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Id. at 68. State-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. Seymour v. Walker, 224 F.3d 542, 552 (6th Cir. 2000); Roe v. Baker, 316 F.3d 557, 567 (6th Cir.2002) ("[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial"); Coleman v. Mitchell, 268 F.3d 417, 439 (6th Cir. 2001); Bugh v. Mitchell, 329 F.3d 496, 512 (6th Cir. 2003).  This approach accords the state courts wide latitude in ruling on evidentiary matters.  Seymour, 224 F.3d at 552 (6th Cir. 2000).  The court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts.  Sanders v. Freeman, 221 F.3d 846, 860 (6th Cir. 2000).

Three witnesses testified that prior to the shooting, Petitioner had made threats against the victim's boyfriend, Jesse Ramer, who was living with the victim at the time of her murder. There was testimony that (1) Petitioner was angry with Ramer because he had caused Petitioner to be arrested, and in turn, compelled to pay $700; (2) on the night of the shooting, the victim informed Petitioner that she, rather than Ramer, had contacted the police, which led to Petitioner's arrest; and finally, (3) Petitioner stated that killing the victim would hurt her boyfriend more than killing the boyfriend himself.  The Michigan Court of Appeals observed that only relevant evidence is admissible, MRE 402, and that evidence is relevant if it has some

tendency to prove a fact in issue.  MRE 401.  Reasoning that "all elements of a criminal offense

are 'in issue' when a defendant enters a plea of not guilty,'" the Court found that the testimony

"tended to establish a reason for the defendant to be at the residence on the night of the

shooting," and "to prove the material issue"of Petitioner's intent, a necessary element of the

crime of first-degree murder.[1]  (Docket #23, People v. Coker, Mich. Ct. App., March 30, 2004,

4-5).

There is no clearly established Supreme Court precedent that holds that a state violates

due process by permitting evidence that is probative as to one of the essential elements of the

charged crime.  Moreover, the court does not find that the testimony of the three witnesses

constituted an introduction of evidence "so extremely unfair that [it] violates fundamental

conceptions of justice."  Dowling v. United States, 493 U.S. 342, 353 (1990).  Petitioner has not

met the difficult standard for finding a constitutional violation with regard to the admission of

the testimony of the three witnesses.

Petitioner further argues that Ms. Swift should not have been permitted to testify that she

was encouraged by Ms. Lockhart to lie because Ms. Lockhart's actions were not relevant.  The

Michigan Court of Appeals found that the trial court had not abused its discretion in admitting

this evidence because the credibility of a witness is always relevant.  (Docket #23, People v.

Coker, Mich. Ct. App., March 30, 2004, 5).  As previously noted, state-court evidentiary rulings

---

[1]Under Michigan law, to establish first-degree premeditated murder, the prosecutor must prove that the defendant intentionally killed the victim, and that the act of killing was premeditated and deliberate.  MICH. COMP. LAWS § 750.316; People v. Saunders, 473 N.W.2d 755 (1991).

cannot rise to the level of due process violations unless they offend some principle of justice so

rooted in the traditions and conscience of our people as to be ranked as fundamental. <u>Seymour</u>,

224 F.3d at 552. Michigan Rule of Evidence 402 , which is identical to Federal Rule of

Evidence 402, provides that all relevant evidence is admissible. Ms. Swift's testimony was

permitted, not to attack the Petitioner, but because it was relevant to the credibility of Ms.

Lockhart's testimony, and the weight the jury should give to that testimony. Moreover, Ms.

Swift's testimony regarding Ms. Lockhart did not render the trial fundamentally unfair,

considering the substantial evidence supporting Petitioner's conviction. The Michigan Court of

Appeals decision on this issue was neither contrary to, nor an unreasonable application of,

clearly established federal law.

### Claim III

Petitioner claims that the trial court violated his constitutional rights by allowing

inadmissible hearsay evidence under Michigan's "catch all" exception to the hearsay rule, MRE

803(24). He argues that the state court erred by deciding the issue under <u>Ohio v. Roberts</u>, 448

U.S. 56 (1980), which had been overruled by <u>Crawford v. Washington</u>, 541 U.S. 36 (2004) at the

time the time the Michigan Court of Appeals addressed this claim.

Michelle Janes testified that her boyfriend, Chris Edgington, told her that Petitioner had

said not to go the victim's home because Petitioner would not want them to get hit with a stray

bullet, and that in a telephone conversation between Edgington and Petitioner on the night of the

shooting Petitioner had said that "I told you I'd be getting a hold of you. I'm going to stop over.

Stay home." The trial court allowed Jane's testimony over the defense's objection.

The Michigan Court of Appeals noted the decision in <u>Crawford</u>, but concluded that the

hearsay to which Petitioner objected was non-testimonial, and therefore, the Court applied the

Robert's standard.  Under Michigan's "catch-all" exception, when a declarant is unavailable, a

statement is admissible if the statement is not specifically covered by any other exception, but

has "equivalent circumstantial guarantees of trustworthiness," may be admitted.  MRE 804(b)(7).

The Court of Appeals found that the declarant was unavailable.[2]  It also found that there were

sufficient circumstantial guarantees of trustworthiness to be reliable: the declarant (1)

consistently made the same statement, (2) made the statement voluntarily, (3) had no motive to

lie because he was Petitioner's friend, and (4) made the statement contemporaneously and

spontaneously to a loved one.  (Docket # 23, Michigan Court of Appeals, March 30, 2004, 7-8).

The Sixth Amendment Confrontation Clause provides that in "all criminal prosecutions,

the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S.

Const. amend. VI.  Under Roberts, an hearsay statement could be admitted only if the individual

was unavailable to testify and if the statement bore "adequate indicia of reliability."  Roberts,

488 U.S. at 66.  A statement showed adequate indicia of reliability if it fit within a "firmly

rooted" hearsay exception or offered other "particularized guarantees of trustworthiness."  Id.

In Crawford, the Supreme Court abrogated Roberts as it applied to testimonial hearsay

statements, explaining that allowing testimonial statements based upon their reliability, where

there has been no opportunity to cross-examine the declarant, was inconsistent with the proper

understanding of the Confrontation Clause.  The Court held that "[w]here testimonial statements

are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one

---

[2]Apparently, the day before Petitioner's trial, Chris Edgington attempted to commit suicide in order to avoid testifying.

the Constitution actually prescribes: confrontation." Crawford, 541 U.S. at 68-9.

While Crawford abrogated Roberts as to testimonial hearsay, the Supreme Court did not disturb the rule that non-testimonial statements are constitutionally admissible if they bear independent guarantees of trustworthiness.   After Crawford, the Sixth Circuit has consistently held that the Roberts standard continued to apply to non-testimonial hearsay.  See United States v. Arnold, 486 F.3d 177, 192 (6th Cir. 2007); United States v. Johnson, 440 F.3d 832, 843 (6th Cir. 2006) ("the statements at issue are not testimonial . . . and the rule announced in Crawford is inapplicable by its own terms"); United States v. Gibson, 409 F.3d 325, 337-38 (6th Cir. 2005) (Crawford "did not disturb the rule that nontestimonial statements are constitutionally admissible if they bear independent guarantees of trustworthiness"); United States v. Franklin, 415 F.3d 537, 546 (6th Cir. 2005) ("Roberts and its progeny remain the controlling precedents" with respect to non-testimonial hearsay statements).

Accordingly, the dispositive question in the present case  is whether Janes' testimony is testimonial or non-testimonial hearsay.  In Crawford, the Supreme Court left "for another day any effort to spell out a comprehensive definition of 'testimonial.'" Crawford, 541 U.S. at 68. The Court did, however, provide three "formulations of th[e] core class of 'testimonial' statements":

> (1) ex parte in court testimony or its functional equivalent - that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially;
>
> (2) extrajudicial statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; and,

12

(3) statements that were made under circumstances that would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.

Id. at 51-52. Crawford advised that an "accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." Id. at 51. The courts have consistently found that statements made to family members, friends and acquaintances are not testimonial. See United States v. Franklin, 415 F.3d 537, 545 (6th Cir.2005)(concluding that statements were non-testimonial where witness "was privy to [Declarant]'s statements only as his friend and confidant"); United States v. Saget, 377 F.3d 223, 229 (2d Cir.2004) (concluding that a declarant's statements to a confidential informant, whose true status was unknown to the declarant, did not constitute testimony within the meaning of Crawford); United States v. Lee, 374 F.3d 637, 645 (8th Cir. 2004) (finding that a statement to a person's mother does "not implicate the core concerns of the confrontation clause"); United States v. Manfre, 368 F.3d 832, 838 n. 1 (8th Cir.2004) (finding that the "declarant's comments were made to loved ones or acquaintances and are not the kind of memorialized, judicial-process-created evidence of which Crawford speaks"); United States v. Cervantes-Flores, 421 F.3d 825, 833-34 (9th Cir. 2005) (noting that Crawford's examples "all involve live out-of-court statements against a defendant elicited by a government officer with a clear eye to prosecution."). In the present case, the statements made by Edgington, and testified to by Janes, were simply between friends, and bore none of the qualities of a testimonial statement as set forth in Crawford. Thus, Crawford is not applicable here. Because the application of Roberts by the Michigan Court of Appeals was neither contrary to, nor an unreasonable application of, clearly established federal law, Petitioner is not entitled to habeas relief on this claim.

13

### Conclusion

For the foregoing reasons, the court finds that Petitioner's claims have no merit, and he is not entitled to habeas corpus relief.  Therefore,

The Petition for Habeas Corpus is DENIED.


So ordered this 23rd day of September, 2008.


 /s/ Wendell A. Miles
Wendell A. Miles
Senior U.S. District Judge